**BOHM, MATSEN, KEGEL & AGUILERA, LLP**
Lee A. Wood – Of Counsel (SBN 58676)
Matthew J. Salcedo (SBN 237866)
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
Telephone: (714) 384-6500
Facsimile: (714) 384-6501

Attorneys for Defendants CITY OF MAYWOOD,
a municipal corporation and public entity,
RICHARD LYONS, JERRY SALGADO,
PAUL PINE, and ANDREW SERRATA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL LARA; DORA LARA; HECTOR LARA; and MARIBEL NUNEZ, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF MAYWOOD, a Public Entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a Public Entity; and DOES 1 to 20, inclusive, <br><br> Defendants. | **CASE NO.: CV08-3469 MMM (VBKx)** <br> Assigned For All Purposes To The Hon. Margaret M. Morrow, Courtroom 780 <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF MATTHEW J. SALCEDO** <br><br> *[Separate Statement of Uncontroverted Material Facts Filed Concurrently Herewith]* <br><br> **DATE:     APRIL 27, 2009** <br> **TIME:     10:00 AM** <br> **CTRM:     780** <br><br> Complaint Filed:  April 17, 2008 <br> Trial Date:        August 25, 2009 |

1

**DEFENDANTS' NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

   **PLEASE TAKE NOTICE** that on April 27, 2009, at 10:00 am in Courtroom 780 of the above-entitled court, located at 255 East Temple Street, Los Angeles, California 90012, Defendants CITY OF MAYWOOD, a municipal corporation and public entity, RICHARD LYONS, JERRY SALGADO, PAUL PINE, and ANDREW SERRATA will move this court for summary judgment as to Plaintiffs' entire complaint as there are no genuine issues of material fact with regard to the claims that Plaintiffs are making therein.

   In the alternative, the Maywood Defendants will move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against Plaintiffs on the ground that there are no genuine issues of material fact with regard to the issues set forth in the attached Memorandum of Points and Authorities and Separate Statement of Uncontroverted Material Facts and Supporting Evidence.

   The Motion will be based upon this notice, the attached Memorandum of Points and Authorities, Defendants' Separate Statement of Uncontroverted Material Facts and Supporting Evidence, the complete court file in this action, the declaration of Matthew J. Salcedo and all exhibits attached thereto, and upon such other oral and documentary evidence as the court may consider on this Motion.

   This Motion is made following the conference of counsel pursuant to Local Rule of Court 7-3, which took place on February 27, 2009, March 19, 2009, and March 20, 2009.

DATED: March 24, 2009      **BOHM, MATSEN, KEGEL & AGUILERA, LLP**

                           By: _____
                               Matthew J. Salcedo,
                               Attorneys for Defendants CITY OF
                               MAYWOOD, a municipal corporation and
                               public entity, RICHARD LYONS, JERRY
                               SALGADO, PAUL PINE, and ANDREW
                               SERRATA

2

**DEFENDANTS' NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

# *Table of Contents*

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

I.   INTRODUCTION ....................................................................................1

II.  STATEMENT OF FACTS .......................................................................2

III. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW WHERE THE PLAINTIFFS LACK ESSENTIAL EVIDENCE TO MEET THEIR BURDEN OF PROOF OR WHERE THE DEFENDANTS HAVE A COMPLETE DEFENSE........................................5

IV.  THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THEY DID NOT IMPROPERLY SEARCH THE LARA HOME .......................................................6

   A.   THE MAYWOOD DEFENDANTS HAD PROBABLE CAUSE TO BELIEVE THAT SUSPECT LARA WAS AT THE LARA HOME. 6

   B.   THE MAYWOOD DEFENDANTS HAD A VALID SEARCH WARRANT. ....................................................................7

V.   THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THEY DID NOT IMPROPERLY SEIZE OR DETAIN PLAINTIFFS ....................................................7

   A.   PLAINTIFFS' DETENTION WAS INCIDENTAL TO A VALID SEARCH AND THE MAYWOOD DEFENDANTS HAD OBJECTIVE JUSTIFICATION TO DETAIN PLAINTIFFS. ..........8

   B.   THE MAYWOOD DEFENDANTS HAD LEGITIMATE LAW ENFORCEMENT INTERESTS FOR DETAINING PLAINTIFFS. 9

   C.   THE NINTH CIRCUIT HAS HELD THAT DETENTIONS INCIDENTAL TO A WARRANT-BASED SEARCH ARE CONSTITUTIONAL IF THEY ARE CO-EXTENSIVE WITH THE SEARCH........................................................................10

VI. **THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFFS' DAMAGES CLAIMS** .......12

    A.    **THE EVIDENCE ESTABLISHES THAT THE MAYWOOD DEFENDANTS DID NOT FALSELY IMPRISON PLAINTIFFS DORA LARA AND HECTOR LARA.** ...............12

    B.    **THE EVIDENCE ESTABLISHES THAT THE MAYWOOD DEFENDANTS DID NOT PHYSICALLY INJURE PLAINTIFFS.** ...............13

    C.    **THE EVIDENCE ESTABLISHES THAT PLAINTIFF ANGEL LARA DID NOT SUFFER EMOTIONAL INJURY DUE TO THE INCIDENT.** ...............13

    D.    **THE EVIDENCE ESTABLISHES THAT PLAINTIFFS HAVE NOT SOUGHT OR OBTAINED ANY MEDICAL TREATMENT FOR ANY ALLEGED PHYSICAL, MENTAL, OR EMOTIONAL INJURIES.** ...............13

    E.    **THE EVIDENCE ESTABLISHES THAT NONE OF THE PLAINTIFFS HAS LOST ANY INCOME OR EARNINGS AS A RESULT OF THE INCIDENT.** ...............14

VII. **THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFFS' FAILURE TO INTERVENE CLAIM BECAUSE THEY DID NOT VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS DURING THE SEARCH** 14

    A.    **THE MAYWOOD DEFENDANTS HAD NO AFFIRMATIVE DUTY TO INTERVENE BECAUSE PLAINTIFFS' CONSTITUTIONAL RIGHTS DURING THEIR DETENTION WERE NOT VIOLATED.** ...............14

    B.    **THE MAYWOOD DEFENDANTS DID NOT HAVE AN OPPORTUNITY TO PREVENT ANY PROPERTY DAMAGE.** ...15

TABLE OF CONTENTS/AUTHORITIES

VIII.  **THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THEY DID NOT DAMAGE PLAINTIFFS' PROPERTY** ......................................................... 16

   A.   **THE MAYWOOD DEFENDANTS DID NOT DAMAGE DORA LARA'S HOME.** ........................................................ 16

   B.   **THE MAYWOOD DEFENDANTS DID NOT DAMAGE PLAINTIFF ANGEL LARA'S VEHICLE.** ....................... 16

IX.  **THE MAYWOOD DEFENDANTS HAVE A COMPLETE DEFENSE TO THE PLAINTIFFS' CLAIMS BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY** ......................................................... 17

   A.   **THE MAYWOOD DEFENDANTS DID NOT VIOLATE PLAINTIFFS' RIGHT TO FREEDOM FROM UNREASONABLE SEARCH OR SEIZURE/DETENTION.** .............................. 18

   B.   **THE MAYWOOD DEFENDANTS DID NOT VIOLATE PLAINTIFFS' RIGHT TO FREEDOM FROM THE USE OF EXCESSIVE FORCE.** .......................................................... 19

   C.   **THE MAYWOOD DEFENDANTS DID NOT VIOLATE PLAINTIFFS' RIGHT TO FREEDOM FROM DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW.** ...................... 19

   D.   **THE QUALIFIED IMMUNITY INQUIRY UNDER *SAUCIER* IS OVER SINCE THE PLAINTIFFS CANNOT ESTABLISH THE VIOLATION OF A CONSTITUTIONAL RIGHT.** ......................... 20

X.   **PLAINTIFFS' *MONELL* CLAIM FOR RELIEF AGAINST THE CITY SHOULD BE DISMISSED** ......................................................... 20

   A.   **PLAINTIFFS CANNOT PROVE THAT THE DEFENDANT OFFICERS VIOLATED ANY CONSTITUTIONAL RIGHT.** ....... 22

**B.    PLAINTIFFS HAVE NOT APPROPRIATELY IDENTIFIED THE CUSTOMS OR POLICIES THAT ALLEGEDLY CAUSED THEIR CONSTITUTIONAL DEPRIVATIONS.**............................................23

**C.    PLAINTIFFS HAVE NOT PRESENTED EVIDENCE REGARDING ANY UNCONSTITUTIONAL ACTS BY FINAL POLICYMAKERS.**...................................................................24

**D.    PLAINTIFFS HAVE NOT ESTABLISHED A CAUSAL LINK BETWEEN ANY MUNICIPAL POLICY, CUSTOM OR SUPERVISORY ACT AND THEIR ALLEGED INJURIES.**...........24

**XI.  CONCLUSION**..................................................25

iv

**TABLE OF CONTENTS/AUTHORITIES**

1
2

### *Table of Authorities*
**Cases**

3   *Adickes v. S.H. Kress & Co.* (1970) 398 U.S. 144, 157, 157, *90 S.Ct. 1598, 26*
4      *L.Ed.2d 142* ..................................................................................................5
5   *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).......................................5
6   *Aguillard v. McGowan*, 207 F.3d 226 (5th Cir. 2000)................................22
7   *Atwater v. City of Lago Vista* (2001) 533 U.S. 924, 121 S.Ct. 2540, 150 L.Ed.2d 709
8      .................................................................................................................17
9   *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382,
10      137 L. Ed. 2d 626 (1997)...........................................................................20
11  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405-408, 412, 117 S. Ct. 1382,
12      137 L. Ed. 2d 626 (1997)......................................................................22, 23
13  *Carter v. District of Columbia*, 795 F. 2d 116, 123-124 (D.C. Cir. 1986).................21
14  *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 ..5
15  *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197 (1989)...................20, 21
16  *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986)
17      .................................................................................................................22
18  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S. Ct. 915, 926 (1988) .........21
19  *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1028 (3d Cir. 1991) .................24
20  *Dawson v. City of Seattle*, 435 F.3d 1054 (9th Cir. 2006)............................11
21  *DeBoer v. Pennington*, 206 F.3d 857, 864 (9th Cir. 2000)..........................17
22  *Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 217-219 (5th Cir. 1998)........18
23  *Escamilla v. City of Santa Ana*, 796 F.2d 266, 268 (9th Cir. 1986) ...........14
24  *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 715, 872 P.2d 559 .............................12
25  *Fortyune v. Amer. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004)...............5
26  *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).........................20
27  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 ............8, 10
28  *Hamilton v. Rodgers,* 791 F.2d 439, 443-444 (5th Cir. 1986).......................21

*Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S.Ct. 2727 ..... 17

*Hernandez v. Texas Dept. of Protective Services*, 380 F.3d 872, 882-884 (5th Cir. 2004) ................................................................................................................. 18

*Johnson v. Hardin County*, 908 F.2d 1280, 1285 (6th Cir. 1990) ............................. 24

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 (9th Cir. 1981 ..................................... 5

*Maryland v. Garrison* (1987) 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 .......... 7

*McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003) ............................... 18

*McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000) .............................................. 21

*Michigan v. Summers* (1981) 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 ............. 7

*Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ........................................................................................................................ 20

*Muehler v. Mena, supra,* 544 U.S. at 95 ................................................................. 9, 10

*Nissan Fire & Marine Insur. Co., Ltd. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) .......................................................................................................................... 5

*Quintanila  v. City of Downey*, 84 F.3d 353, 354-356 (9th Cir. 1996) ...................... 22

*Saucier v. Katz*, 533 U.S. 194, 200 (2001) ............................................................... 17

*Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000) ..................................... 17

*Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002) ................................................ 18

*Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1997) ................... 21

*Ting v. United States,* 927 F.2d 1504, 1511-12 (9th Cir. 1991) ................................ 15

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ................................................. 21

## Statutes

*California Penal Code* § 236 ....................................................................................... 12

*Fed. R. Civ. Proc.* 56(d) ................................................................................................ 5

*Fed. R. Civ. Proc.*Rule 56(c) ......................................................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On March 10, 2007, Maywood Officers Garcia and Ringrose were on gang patrol and saw Louis Felix Delgado Lara ("Suspect Lara") standing on a Maywood street corner, drinking a 24 oz. can of beer. Suspect Lara had been arrested on several occasions prior to the incident and was known by the Maywood Police Department as an active member of the Maywood Locos gang.  The Maywood officers attempted to stop Suspect Lara in order to cite him for drinking alcohol in public.  Suspect Lara yelled "Fuck you, cops!" and immediately fled. The Maywood officers yelled "Stop, Police!" and gave chase.  Suspect Lara turned into a driveway and began climbing a metal fence in an effort to escape. Officer Garcia approached Suspect Lara as he was climbing the fence.  While atop the fence, Suspect Lara paused, turned back at Officer Garcia, pulled out a semi-automatic pistol, and fired at Officer Garcia.  Suspect Lara then ran out of sight and was not located that night.

After his arrest on March 13, 2007, Suspect Lara was convicted on felony charges, and was sentenced to 10 years in state prison. (UMF 160.)

Plaintiffs filed their First Amended Complaint ("FAC") on July 28, 2008. The FAC alleges claims against Defendants CITY OF MAYWOOD, RICHARD LYONS, JERRY SALGADO, PAUL PINE, and ANDREW SERRATA ("the Maywood Defendants") for unreasonable search and seizure, failure to intervene, and municipal liability regarding alleged acts and/or omissions that occurred on March 12, 2007, leading up to Suspect Lara's arrest.  However, Plaintiffs' undisputed testimony demonstrates that they cannot meet their burden of proof as to said claims. Further, the Maywood Defendants have a complete defense of qualified immunity as to each of Plaintiffs' claims.

Thus, the Maywood Defendants respectfully request that the Court grant summary judgment, or, in the alternative, partial summary judgment as to the issues identified herein.

1

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## II.    **STATEMENT OF FACTS**

Defendant Detective ANDREW SERRATA was assigned to investigate the March 10, 2007 shooting incident involving Suspect Lara. (UMF 1.)  On March 12, 2007, at approximately 8:00 a.m., Defendant SERRATA contacted Dave Ishibashi of the U.S. Marshals Task Force. (UMF 2.)  Agent Ishibashi had Norma Lara, Suspect Lara's mother, contact Suspect Lara by telephone number (323) 585-5937. (UMF 3.) The telephone number was traced to 4046 57th Street, Maywood, California ("the Lara Home"). (UMF 4.) As soon as the location was confirmed, the Maywood Defendants dispatched to the Lara Home and set up a perimeter. (UMF 5.) While en route, SERRATA learned that Suspect Lara was still on the land telephone line with Norma Lara. (UMF 6.)  Based on the foregoing, the Maywood Defendants had probable cause to believe that Suspect Lara was located at the Lara Home. (UMF 7.) Further, the Maywood Defendants knew that Suspect Lara was an active Maywood Locos gang member and had an active warrant out for his arrest for possession of a concealed firearm.   (UMFs 8-13.)   The Maywood officers had probable cause to believe that Suspect Lara was armed and dangerous at the Lara Home. (UMFs 14, 15.)

Upon their arrival at approximately 4:30 p.m., Maywood officers telephoned the Lara Home for Suspect Lara to exit. (UMF 16.)  They spoke to DORA LARA and asked if Suspect Lara was at the Lara Home. (UMF 17.)  They ordered DORA LARA to leave her home because Suspect Lara was believed to be inside. (UMF 18.)  DORA LARA opened her front door and walked to the officers. (UMF 19.)   MARIBEL NUNEZ, LMD, and ANGEL LARA also exited the Lara premises. (UMFs 20-22.) The officers told the occupants to go to the corner of the block, located at 57th Street and Gifford Avenue. (UMF 23.)

With the Plaintiffs safely out of the Lara Home, the Maywood officers made several public announcements and telephone calls ordering Suspect Lara to exit the Lara Home. (UMFs 24, 25.)  However, Suspect Lara refused to surrender.  (UMF 26.)

2

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Once safely out of the Lara Home, the Maywood officers interviewed Plaintiffs DORA LARA, ANGEL LARA, and MARIBEL NUNEZ in order to gather information regarding Suspect Lara. (UMF 27, 29, 34.)

When the officers interviewed DORA LARA, she told Detective SERRATA that Suspect Lara was at the Lara Home earlier in the morning, but had left. (UMF 27.) SERRATA did not believe DORA LARA's statement was consistent with the telephone call made just minutes earlier that traced Suspect Lara to the Lara Home. (UMF 28.)

When the officers interviewed MARIBEL NUNEZ, she first told the officers that Suspect Lara was in fact hiding at the back of the Lara Home. (UMF 29.) Then, MARIBEL NUNEZ changed her story and told the officers that she did not know where Suspect Lara was. (UMF 30.) Based on her lack of cooperation and changing of her story, officers placed MARIBEL NUNEZ in a police vehicle at the command post in order to segregate her from the other Plaintiffs. (UMF 31.) She was allowed to have her baby, LMD, with her while she sat in the police vehicle. (UMF 32.)

When the Maywood officers tried to interview ANGEL LARA, he became combative with the officers and kept telling them that they needed a search warrant to enter the Lara Home. (UMFs 33, 34.) Shortly thereafter, a Maywood officer asked ANGEL LARA to go to the command post for questioning approximately two blocks away from the Lara Home. (UMFs 35.) During this time, ANGEL LARA knew that Suspect Lara was a member of the Maywood Locos gang on March 12, 2007, and he figured that the law enforcement agents had come to the Lara Home in search of Suspect Lara. (UMFs 36, 37.) Further, ANGEL LARA testified that he had seen Suspect Lara at the Lara Home that day for about two hours. (UMF 38.) However, rather than try to assist the law enforcement officers, ANGEL LARA became combative towards the officers. At one point, ANGEL LARA told the law enforcement agents to either question him or arrest him and take him to the station. (UMF 39.)

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

At approximately 7:30 p.m., Plaintiff HECTOR LARA arrived at the scene from work. (UMF 52.) The officers ordered him not to enter the Lara Home until the search for Suspect Lara was over.  (UMF 53.)

Given the lack of cooperation from Plaintiffs and repeated attempts to peacefully have Suspect Lara exit the Lara Home, the Maywood officer became very concerned that their further attempts to have Suspect Lara come out of the Lara Home would be futile.  Because of the high risk of danger that Suspect Lara posed, the Maywood officers requested the assistance of the Los Angeles Sheriff's Department's Special Enforcement Bureau ("SEB") to barricade the Lara Home.  (UMF 40.) The SEB arrived on scene and relieved all Maywood personnel containment positions. (UMFs 41, 42.)

The SEB agents made numerous announcements and telephone calls to Suspect Lara over several hours for Suspect Lara to exit, to no avail. (UMFs 43-46.) The announcements and phone calls to Suspect Lara lasted for approximately three hours. (UMF 56.)  While at the command post, SEB agents questioned ANGEL LARA about a schematic/map of the Lara Home. (UMF 48.)

Over several hours, Suspect Lara still refused to voluntarily exit the Lara Home.  At approximately 9:30 p.m., the Maywood Defendants obtained a warrant to search the Lara Home. (UMF 55.)  Given Suspect Lara's resistance to voluntarily exit the Lara Home, the SEB put its tactical plan into force. (UMF 56.) The SEB agents shot canisters of tear gas and other chemical agents into the Lara Home, its rear addition, and into ANGEL LARA's Jeep Cherokee.  (UMFs 57-61; 64.)  The SEB then used explosive and ramming devices to enter the rear addition.  (UMFs 62-63.) After several hours, Suspect Lara exited the Lara Home. (UMF 65.)  The SEB agents ultimately apprehended Suspect Lara.  (UMF 66.)  Suspect Lara was medically cleared for booking, and at approximately 12:37 a.m. on March 13, 2007, the SEB agents turned Suspect Lara over to Detective SERRATA for arrest. (UMFs 67-70.)

///

4

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Before Suspect Lara was finally apprehended, ANGEL LARA and MARIBEL NUNEZ were released from detention. (UMFs 49-51.)  Their detention did not exceed the amount of time the law enforcement agents used to search for Suspect Lara and extricate him from the Lara Home. (UMF 52.)

## III.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW WHERE THE PLAINTIFFS LACK ESSENTIAL EVIDENCE TO MEET THEIR BURDEN OF PROOF OR WHERE THE DEFENDANTS HAVE A COMPLETE DEFENSE

Summary judgment is appropriate when the moving parties demonstrate that no genuine issue exists as to any material fact, and that the moving parties are entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.* (1970) 398 U.S. 144, 157, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142; *Fortyune v. Amer. Multi-Cinema, Inc.,* 364 F.3d 1075, 1080 (9th Cir. 2004).  The court may grant summary judgment as to any claim or discrete elements of claims. Fed.R.Civ.Proc. 56 (a), (b), (d); *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 769 (9th Cir. 1981).  Defendants can move for summary judgment either by proving that they have a complete defense or by showing that Plaintiffs cannot meet their burden of proof.  *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265.

Defendants can meet their burden of production by disproving an essential element of Plaintiffs' claim or by showing that Plaintiffs lack sufficient evidence regarding an essential element of their claim, and thus cannot carry their burden of persuasion at trial.  *Celotex Corp., supra,* 477 U.S. at 323; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). A summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp., supra,* 477 U.S. at 323.  Moreover, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.  "[A] complete failure of proof concerning an essential element of

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Id.* at 587. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is mere metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

## IV.    THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THEY DID NOT IMPROPERLY SEARCH THE LARA HOME

Plaintiffs allege that the Maywood Defendants improperly "stormed" and "invaded" the Lara Home. (FAC ¶¶ 1, 2, 3, 25, 27, 28, 30, 31.) Plaintiffs also claim that the Maywood Defendants engaged in unlawful "breaking and entering" of the Lara Home. (FAC ¶ 48.) However, as set forth below, the Maywood Defendants had probable cause to believe that Suspect Lara was located at the Lara Home and obtained a valid warrant to search the Lara Home. Further, the Maywood Defendants obtained the search warrant before any law enforcement agent entered the Lara Home to apprehend Suspect Lara. (UMFs 54, 55.)

### A. THE MAYWOOD DEFENDANTS HAD PROBABLE CAUSE TO BELIEVE THAT SUSPECT LARA WAS AT THE LARA HOME.

On March 12, 2007, Defendant SERRATA was informed that Suspect Lara's mother, Norma Lara, called Suspect Lara at the Lara Home. (UMFs 2, 3.) The telephone call between Norma Lara and Suspect Lara was traced to the Lara Home. (UMF 4.) Based thereon, Maywood officers dispatched to the Lara Home to set up a perimeter around the location and conduct surveillance. (UMF 5.) While en route to the Lara Home, Suspect Lara was still on the traced phone line with Norma Lara.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

(UMF 6.)  Based on the foregoing, the Maywood Defendants had probable cause to believe that Suspect Lara was located at the Lara Home.

### B. THE MAYWOOD DEFENDANTS HAD A VALID SEARCH WARRANT.

A search warrant is valid where it is based on probable cause and particularly describes the place to be searched and items to be seized. *Maryland v. Garrison* (1987) 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72.  As explained above, the Maywood officers had probable cause to believe that Suspect Lara was located at the Lara Home on March 12, 2007, and that he was still at the Lara Home upon their arrival.  The warrant that Magistrate Robin M. Sloan issued on March 12, 2007, appropriately described the Lara Home as well as items to be seized. (UMF 55; *see* Exhibit F attached to Declaration of Matthew J. Salcedo.) Thus, the Maywood Defendants had a valid warrant to search the Lara Home.

### V. THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THEY DID NOT IMPROPERLY SEIZE OR DETAIN PLAINTIFFS

Plaintiffs claim that the Maywood Defendants improperly seized and detained them during the search for Suspect Lara without probable cause or justification, and in so doing, violated their constitutional rights. However, it is well settled that law enforcement agents have inherent authority to detain any occupant of a premises that is targeted in a search warrant. *Michigan v. Summers* (1981) 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340.  Further, when the search involves *a wanted gang member* located on the premises – such as Suspect Lara – the governmental interests in detaining occupants by any force necessary, including the use of handcuffs, *are at their maximum. Muehler v. Mena* (2005) 544 U.S. 93, 95, 125 S.Ct. 1465, 161 L.Ed.2d 299. (Emphasis added.)  While detentions are not limitless, the courts have held that they are constitutional if: 1) reasonable force is used in effectuating the detention; and 2) the duration of the detention does not exceed the duration of the search. *Id.* at 98; *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

443.

## A. PLAINTIFFS' DETENTION WAS INCIDENTAL TO A VALID SEARCH AND THE MAYWOOD DEFENDANTS HAD OBJECTIVE JUSTIFICATION TO DETAIN PLAINTIFFS.

In *Michigan v. Summers, supra,* the U.S. Supreme Court dealt with the constitutionality of detaining an occupant of a house targeted by a valid search warrant. The Court set forth a principal that is quoted in nearly every recent case on the issue of detentions incident to warrant-based searches: ***"An officer's authority to detain incident to a search is <u>categorical</u>;*** it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Id.* at 705, n. 19. (Emphasis added.) There, as officers were about to execute a search warrant on a house, they encountered an occupant leaving the target house. *Id.* at 693. The officers requested the occupant's assistance in gaining entry into the house and detained him while they searched the house. *Id.* The Court held that a warrant to search a target premises ***implicitly carried the limited authority to detain occupants of the target premises***. *Id.* at 704-705. (Emphasis added.)

The *Summers* Court reasoned that: "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 702-703. The Court also reasoned that a search warrant provides objective justification for detention: "[T]he detention of an occupant represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant. <u>A search warrant, however, provides an objective justification for the detention.</u> A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime. Thus, a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home." *Id.* at 703-704. (Emphasis added.) ***"The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity***

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1   *justifies a detention of that occupant."*  *Id.* (Emphasis added.)

2       In the instant case, all Plaintiffs were occupants of the Lara Home, which was

3 the target of a valid search warrant. Springing from the valid search warrant was

4 implicit authority for the Maywood Defendants to detain the occupants of the Lara

5 Home. *See id.* at 704-705. As in *Summers,* the search warrant provided the Maywood

6 Defendants with objective justification to detain the Plaintiffs during the search. *See*

7 *id.* at 703-704. Moreover, because the Plaintiffs were occupants of the Lara Home,

8 the Maywood Defendants were provided with a "connection" under *Summers* to the

9 Lara Home, such that the Maywood Defendants had "an easily identifiable and

10 certain basis for determining suspicion of criminal activity" on the Plaintiffs' part,

11 which justified their detention. *See id.*

12       Thus, applying the reasoning of *Summers,* the Maywood Defendants had

13 objective justification to detain the Plaintiffs during the search for Suspect Lara.

14     **B. THE MAYWOOD DEFENDANTS HAD LEGITIMATE LAW ENFORCEMENT INTERESTS FOR DETAINING PLAINTIFFS.**

15       In *Muehler v. Mena, supra,* 544 U.S. at 95, the Supreme Court dealt with the

16 detention of occupants of a house that was targeted for a search after a gang-related

17 drive-by shooting. As in *Muehler,* the police believed that one of the occupants was a

18 West Side Locos gang member and that he was armed and dangerous. *Id.* The

19 *Muehler* Court cited three legitimate law enforcement interests for detaining an

20 occupant during a search: (1) to prevent flight of suspects in the event that

21 incriminating evidence is found; (2) to minimize the risk of harm to the officers; and

22 (3) to facilitate the orderly completion of the search. *Id.*

23       As in the instant case, the local police agency in *Muehler* requested that a

24 SWAT team execute the search warrant. *Id.* The SWAT team entered the house,

25 handcuffed the occupants, and handed them over to the local police for detention and

26 questioning. *Id.* at 96. After the hand-over, INS agents asked for each occupant's

27 name, date of birth, place of birth, and immigration status as well as immigration

28 documentation. *Id.* The Supreme Court held that detaining the occupants in

9

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

handcuffs during the search was not unreasonable and did not violate the detainees' Fourth Amendment rights. *Id.* at 98 ("Inherent in *Summers*' authorization to detain is the authority to use reasonable force to effectuate the detention."); *Graham, supra,* 490 U.S. at 396.

As for the police questioning of the detainees and then the INS' further questioning, the Court held that such questioning was constitutional because mere law enforcement questioning does not constitute a seizure. *Muehler, supra,* 544 U.S. at 94. The Court found that the occupants' detention for the duration of the search was reasonable because a warrant existed to search the target house and the detainees were occupants of the house at the time of the search. *Id.* at 98. The *Muehler* Court reasoned that officers have the authority to detain occupants while a proper search is being conducted "because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." *Id.*

Here, as in *Muehler*, the Maywood Defendants had a valid search warrant and probable cause to believe that Suspect Lara, a known gang member, was located in the target house and was armed and dangerous. (UMFs 7-15; 55.) The Maywood Defendants believed that Suspect Lara shot at the Maywood officers two days earlier and strongly believed that he would likely use such force again in order to gain "street cred." (UMF 12.) Accordingly, the Maywood Defendants were well within their rights to detain Plaintiffs for questioning in order to: (1) prevent the flight of Suspect Lara; (2) minimize the risk of harm to the officers; and (3) facilitate the orderly completion of the search for Suspect Lara. *See id.* at 95. The decision to detain Plaintiffs was objectively justifiable, especially given the fact that the Maywood Defendants believed that the Plaintiffs were not telling them the truth about where Suspect Lara was located.

## C. THE NINTH CIRCUIT HAS HELD THAT DETENTIONS INCIDENTAL TO A WARRANT-BASED SEARCH ARE CONSTITUTIONAL IF THEY ARE CO-EXTENSIVE WITH THE SEARCH.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

It is anticipated that the Plaintiffs will argue that even though the Maywood Defendants had justification to detain the Plaintiffs, the detentions were nonetheless unreasonable given the length of time Plaintiffs were detained.  However, this argument fails because the Ninth Circuit has expressly stated that a detention can constitutionally last as long as the subject search.  In the present case, the Plaintiffs were released *before* the search for Suspect Lara ended.

In *Dawson v. City of Seattle*, 435 F.3d 1054 (9th Cir. 2006), the Ninth Circuit analyzed the reasonableness of detentions incidental to valid searches and echoed the holdings in *Summers* and *Muehler*. There, the Ninth Circuit stated: "Whatever previously may have been thought to bear on the reasonableness of a detention incidental to a search, the United States Supreme Court recently held that 'an officer's authority to detain incident to a search is *categorical*; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Id.* at 1066. (Emphasis in original.) "We interpret the Supreme Court's language [in *Summers* and *Muehler*] to mean that the duration of a detention *may be coextensive with the period of a search, and require no further justification*." *Id.* (Emphasis added.)

The *Dawson* court notably held that "the doctrine of *Michigan v. Summers*, permitting police officers to detain individuals during a search, and the principle of *Muehler*, holding that the authority to detain incident to search is categorical, apply to all searches upon probable cause[.]" *Id.* at 1066. "The salient principle … that 'the risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation" is only reinforced by *Muehler's* explanation that the authority to detain pending search is "categorical." *Id.* at 1067.

Here, Plaintiffs were released from detention before the search for Suspect Lara ended. (UMFs 49, 50, 51.) The duration of their detention did not exceed the duration of the search. (UMF 52.)  Pursuant to *Dawson*, because the length of the detention of said Plaintiffs did not exceed the length of the search, the detentions were not

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1  unreasonable.

2  The Court will recall that Suspect Lara's girlfriend MARIBEL NUNEZ first

3  told Maywood Detective SERRATA that Suspect Lara was in fact hiding out at the

4  Lara Home, then recanted her statement upon being re-interviewed.  (UMFs 29, 30.)

5  ANGEL LARA was being combative with the officers, demanding that they produce

6  a search warrant before entering the Lara Home.  Among other things, the totality of

7  the circumstances dictates that Plaintiffs' temporary detentions were necessary and

8  reasonable.

9  Applying the reasoning of *Summers*, *Muehler*, and *Dawson* to the facts and

10  circumstances of this case, the Court should find that the Maywood Defendants are

11  entitled to judgment as a matter of law on these claims.

12  **VI.    THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFFS' DAMAGES CLAIMS**

13

14  **A. THE EVIDENCE ESTABLISHES THAT THE MAYWOOD DEFENDANTS DID NOT FALSELY IMPRISON PLAINTIFFS DORA LARA AND HECTOR LARA.**

15

16  Plaintiffs DORA LARA and HECTOR LARA testified that the Maywood

17  Defendants did not falsely imprison them at any time. (UMFs 71-78.) With regard to

18  false imprisonment, California state law provides important guidance. *California*

19  *Penal Code* § 236 defines false imprisonment as "the unlawful violation of the

20  personal liberty of another."  The California Supreme Court defines false

21  imprisonment as "the nonconsensual, intentional confinement of a person, without

22  lawful privilege, for an appreciable length of time[.]"  *Fermino v. Fedco, Inc.* (1994)

23  7 Cal.4th 701, 715, 872 P.2d 559. Restraint or confinement may be effectuated by

24  means of physical force or threat of arrest. *Id.*

25  The significance of DORA and HECTOR LARA's discovery admissions that

26  they were not falsely imprisoned is that they are affirmatively asserting that their

27  detentions – however long – were done with lawful privilege and did not violate their

28  personal liberty.  Given the fact that they **admitted** that the Maywood Defendants did

12

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

not falsely imprison them, they cannot in good faith argue that their detentions were unreasonable because of the length of time they were detained.  At base, it would be wholly inconsistent for Plaintiffs to admit on the one hand that their personal liberty was not unlawfully violated during the detentions, and on the other hand argue that the detentions were unreasonable because of the length of time they were detained.

Thus, the Maywood Defendants are entitled to judgment as a matter of law as to these issues.

## B. THE EVIDENCE ESTABLISHES THAT THE MAYWOOD DEFENDANTS DID NOT PHYSICALLY INJURE PLAINTIFFS.

Plaintiffs have each admitted that no Maywood Defendant physically injured them at any time during the incident. (UMFs 79-100.)  Plaintiffs cannot possible their meet their burden of proof with respect to their spurious allegations that the Maywood Defendants used excessive force against them, "tortured" them, subjected them to "summary punishment," and that "after being seized, searched, humiliated and arrested by said defendants, PLAINTIFFS suffered injuries to their persons[.]"  (FAC ¶¶46, 49, 50.)  Moreover, by admitting that they were not physically injured during the incident, Plaintiffs cannot maintain their allegations that the Maywood Defendants "refrained from intervening in unlawful seizure and beating" of the Plaintiffs. (FAC ¶ 59.)  Accordingly, said Defendants are entitled to judgment as a matter of law as to these issues.

## C. THE EVIDENCE ESTABLISHES THAT PLAINTIFF ANGEL LARA DID NOT SUFFER EMOTIONAL INJURY DUE TO THE INCIDENT.

Plaintiff ANGEL LARA testified that he does not suffer from any depression, anxiety, or stress as a result of the incident. (UMFs 101-103.) Accordingly, the Maywood Defendants are entitled to judgment as a matter of law as to this issue.

## D. THE EVIDENCE ESTABLISHES THAT PLAINTIFFS HAVE NOT SOUGHT OR OBTAINED ANY MEDICAL TREATMENT FOR ANY ALLEGED PHYSICAL, MENTAL, OR EMOTIONAL INJURIES.

13

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Plaintiffs claim that they suffered physical, mental and emotional injuries due to the alleged conduct of the Maywood Defendants. However, Plaintiffs have each testified that they have not sought or obtained any medical or professional treatment for any alleged injuries as a result of the incident. (UMFs 104-120.) Thus, if any physical, mental, or emotional injuries are to be found, the Maywood Defendants request that this Court find that the Plaintiffs failed entirely to mitigate any such alleged damages.

## E. THE EVIDENCE ESTABLISHES THAT NONE OF THE PLAINTIFFS HAS LOST ANY INCOME OR EARNINGS AS A RESULT OF THE INCIDENT.

Each Plaintiff has testified herein that they have not suffered any loss of earnings or loss of income as a result of the incident. (UMFs 120-125.) Thus, the Maywood Defendants are entitled to judgment as a matter of law as to these issues.

## VII. THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFFS' FAILURE TO INTERVENE CLAIM BECAUSE THEY DID NOT VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS DURING THE SEARCH

Plaintiffs claim that the Maywood Defendants failed to "intervene in and prevent the unjustified and unwarranted false arrest, seizure and infliction of emotional distress of PLAINTIFFS[.]" (FAC ¶ 58.) Plaintiffs further claim that the Maywood Defendants failed to intervene in the property damage suffered by Plaintiffs.

## A. THE MAYWOOD DEFENDANTS HAD NO AFFIRMATIVE DUTY TO INTERVENE BECAUSE PLAINTIFFS' CONSTITUTIONAL RIGHTS DURING THEIR DETENTION WERE NOT VIOLATED.

An officer can be held liable for failing to intervene, only if the claimed injury is the loss of a right secured by the Constitution or federal law. *Escamilla v. City of Santa Ana*, 796 F.2d 266, 268 (9th Cir. 1986). As stated herein, Plaintiffs did not suffer any loss of constitutional or federal rights as a result of their detention.

---

14

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Plaintiffs' detention was incidental to a valid search of the Lara Home, and the Maywood Defendants used a reasonable amount of force to detain the Plaintiffs given the gravity of the situation – to wit, that Suspect Lara was a known fugitive gang member; that Defendants had probable cause to believe that Suspect Lara was armed and dangerous; and that Defendants had probable cause to believe that Suspect Lara was in fact hiding from law enforcement in the Lara Home. Moreover, the Maywood Defendants has reason to believe that the Plaintiffs were not telling them the truth about where Suspect Lara was located.

As Plaintiffs' constitutional rights were not violated as a result of their detention, the Maywood Defendants had no affirmative duty to intervene in or prevent their detention. Thus, the Maywood Defendants are entitled to judgment as a matter of law on this claim.

## B. THE MAYWOOD DEFENDANTS DID NOT HAVE AN OPPORTUNITY TO PREVENT ANY PROPERTY DAMAGE.

A bystanding officer's duty to intervene is operative only when the officer is aware of a specific risk of harm to the plaintiff and has time and realistic opportunity to intervene. *Ting v. United States,* 927 F.2d 1504, 1511-12 (9th Cir. 1991). As mentioned above, the SEB was called in to barricade Suspect Lara and execute the search warrant. (UMF 40.) The SEB relieved all Maywood containment positions, and were responsible for tactically deploying chemical agents, explosive devices, and breaching devises in barricading Suspect Lara and executing the search warrant. (UMFs 41, 42.) The Maywood Defendants did not have a realistic opportunity to intervene in the prevention of property damage due to the fact that the SEB took over containment of the Lara Home and controlled the warrant execution process.

Most obviously, the Maywood Defendants had probable cause to believe that Suspect Lara was armed and dangerous while hiding in the Lara Home, and that he had shot at Maywood officers days before. It would have flown in the face of common sense to try to intervene in the prevention of property damage while a trained tactical entry team was taking every precaution to prevent the loss of life –

1  including their own.

2      Based on the foregoing, the Maywood Defendants had no real opportunity to
3  intervene in the SEB's tactical operations, which ultimately caused damage to the
4  Lara Home and Plaintiff ANGEL LARA's vehicle.

5  **VIII.  THE MAYWOOD DEFENDANTS ARE ENTITLED TO JUDGMENT
        AS A MATTER OF LAW BECAUSE THEY DID NOT DAMAGE
6        PLAINTIFFS' PROPERTY**

7      Plaintiffs HECTOR LARA, MARIBEL NUNEZ, and LMD each testified that
8  the Maywood Defendants did not damage any of their real or personal property.
9  (UMFs 126-146; 147-159.)

10      **A. THE  MAYWOOD  DEFENDANTS  DID  NOT  DAMAGE  DORA
          LARA'S HOME.**

11
12      On March 12, 2007, the Maywood officers requested that the SEB barricade
13  the Lara Home due to Suspect Lara's refusal to surrender.  (UMF 40.)  The SEB
14  agents replaced the Maywood containment personnel at the Lara Home. (UMFs 41,
15  42.)  After several attempts to persuade Suspect Lara to surrender, the SEB employed
16  its tactical plan to barricade Suspect Lara, which resulted in the SEB's deployment of
17  several chemical agents into the Lara Home.  Further, the SEB agents used picks,
18  ramming devises, and explosives to breach the Lara Home.  (UMFs 43-47; 56-64.)
19  At no time during the search did the Maywood Defendants use, deploy or introduce
20  any chemical agents into the Lara Home or its rear addition.  Thus, the Maywood
    Defendants are entitled to judgment as a matter of law on this claim.

21      **B. THE MAYWOOD DEFENDANTS DID NOT DAMAGE PLAINTIFF
          ANGEL LARA'S VEHICLE.**
22

23      At one point, SEB agents believed that Suspect Lara was hiding in Plaintiff
24  ANGEL LARA's Jeep Cherokee, which was parked behind the Lara Home.  (UMF
25  64.)  Based on this belief, SEB agents deployed three CN Gas rounds into the vehicle
26  hoping that Suspect Lara would emerge.  (UMF 64.)  At no time during the search did
27  the Maywood Defendants use, deploy or introduce any chemical agents into Plaintiff
28  ANGEL LARA's Jeep Cherokee.  Accordingly, the Maywood Defendants are entitled

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT**

to judgment as a matter of law on this claim.

## IX.  THE MAYWOOD DEFENDANTS HAVE A COMPLETE DEFENSE TO THE PLAINTIFFS' CLAIMS BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity is a recognition of the fact that "even where personal liability does not ultimately materialize, the mere 'specter of liability' may inhibit public officials in the discharge of their duties." *Atwater v. City of Lago Vista* (2001) 533 U.S. 924, 121 S.Ct. 2540, 150 L.Ed.2d 709.  The purpose of qualified immunity is therefore to allow officials to take action "with independence and without fear of consequences." *Schwenk v. Hartford,* 204 F.3d 1187, 1198 (9th Cir. 2000).  Qualified immunity thus acknowledges that when an official acts in a manner that is not *clearly unlawful*, the public interest is better served by the official being able to make independent and expeditious judgments without fear of consequences, even if those judgments occasionally turn out to be erroneous. *DeBoer v. Pennington,* 206 F.3d 857, 864 (9th Cir. 2000).

Qualified immunity is an entitlement not to go to trial, not merely a defense from liability. *Saucier v. Katz* (2001) 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272.  It should be decided early in the proceedings. *Id.* Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396.

In *Saucier,* the Supreme Court set forth a two-pronged inquiry to resolve qualified immunity claims. First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right? *Saucier, supra*, 533 U.S. at 201.  If no such right has been violated, the plaintiff cannot prevail. *Id.* at 200-201.  Second, if a constitutional right has been violated, was that right clearly established? *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be

17

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case. *Id*. at 201; *Sorrels v. McKee,* 290 F.3d 965, 970 (9th Cir. 2002).

An officer does not lose his or her qualified immunity because of a mistaken belief, nor does the officer lose immunity because of a reasonable mistake as to the legality of the officer's actions. *McCoy v. City of Monticello,* 342 F.3d 842, 846 (8th Cir. 2003). Similarly, actions and decisions by government officials that are inept, erroneous, ineffective or negligent are still entitled to qualified immunity because such conduct does not amount to deliberate indifference, which is the prerequisite for divesting the officials of qualified immunity. *Hernandez ex rel. Hernandez v. Texas Dept. of Protective Services,* 380 F.3d 872, 882-884 (5th Cir. 2004); *Doe v. Dallas Independent School Dist.,* 153 F.3d 211, 217-219 (5th Cir. 1998).

Plaintiffs allege that the Maywood Defendants violated the following constitutional rights: 1) Freedom from unreasonable searches; 2) Freedom from unreasonable seizures; 3) Freedom from the use of excessive force; and 4) Freedom from deprivation of property without due process of law. (FAC ¶¶ 37, 38, 43, 48, 49.)

As set forth more fully below, it is not necessary for the Court to reach the second prong of *Saucier's* two-pronged inquiry because, in each case, the Maywood officers' conduct did not violate a constitutional right.

**A. THE MAYWOOD DEFENDANTS DID NOT VIOLATE PLAINTIFFS' RIGHT TO FREEDOM FROM UNREASONABLE SEARCH OR SEIZURE/DETENTION.**

As stated more fully above, the Maywood Defendants had probable cause to believe that Suspect Lara was hiding out at the Lara Home. (UMF 7.) The Maywood Defendants had probable cause to believe Suspect Lara was dangerous and willing to use deadly force before they detained Plaintiffs. (UMFs 8-15.) The Maywood Defendants had a valid warrant to search the Lara Home, and did not enter the Lara Home until a valid search warrant was obtained. (UMFs 54, 55.) As the search of the

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Lara Home was not improper or unreasonable, the Maywood Defendants did not violate this constitutional right.

Pursuant to the U.S. Supreme Court's holdings in *Michigan v. Summers, supra, Muehler v. Mena, supra,* and the Ninth Circuit's holding in *Dawson v. City of Seattle, supra,* law enforcements agents have the authority to detain occupants of any house that is the subject of a warrant-based search founded on probable cause. Said detentions can be effectuated by reasonable force, including the use of handcuffs. The Maywood Defendants acted in accordance with the authorities in *Summers, Muehler,* and *Dawson,* and did not violate Plaintiffs' constitutional right to unlawful search or seizure.

**B. THE MAYWOOD DEFENDANTS DID NOT VIOLATE PLAINTIFFS' RIGHT TO FREEDOM FROM THE USE OF EXCESSIVE FORCE.**

Each Plaintiff herein has testified that no Maywood Defendant physically injured any Plaintiff at any time during the incident. (UMFs 79-100.) Only Plaintiff ANGEL LARA was handcuffed, and the Maywood Defendants had the inherent authority to use such reasonable force under the circumstances to effectuate his detention. *Muehler, supra,* at 98; *Graham, supra,* at 396. Given the foregoing, the Maywood Defendants did not violate this constitutional right.

**C. THE MAYWOOD DEFENDANTS DID NOT VIOLATE PLAINTIFFS' RIGHT TO FREEDOM FROM DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW.**

As stated above, all Plaintiffs except for DORA LARA and ANGEL LARA testified that the Maywood Defendants did not damage any of their real or personal property. (UMFs 126-146; 147-159.) The SEB agents – not the Maywood Defendants – damaged the Lara Home as well as ANGEL LARA's Jeep Cherokee during their warranted search of the premises and due to the fact that Suspect Lara was refusing to peacefully exit the premises. As the Maywood Defendants did not deprive any Plaintiff of property, they did not violate this constitutional right.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**D. THE QUALIFIED IMMUNITY INQUIRY UNDER *SAUCIER* IS OVER SINCE THE PLAINTIFFS CANNOT ESTABLISH THE VIOLATION OF A CONSTITUTIONAL RIGHT.**

As the Maywood Defendants did not violate any of the constitutional rights that the Plaintiffs allege, the qualified immunity inquiry is over, and the Court need not move onto the second prong. *Saucier, supra*, 533 U.S. at 200-201. If no constitutional right has been violated, Plaintiffs cannot prevail. *Id.* Based on the fact that the Plaintiffs cannot show that the Maywood Defendants violated any alleged constitutional right, Defendants LYONS, PINE, SERRATA, and SALGADO are entitled to the complete defense of qualified immunity.

**X. PLAINTIFFS' *MONELL* CLAIM FOR RELIEF AGAINST THE CITY SHOULD BE DISMISSED**

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 in very limited circumstances. *Monell v. Dep't of Soc. Serv.* (1978) 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611. Cities may only be held liable under § 1983 where a government actor commits an unconstitutional act pursuant to a custom or policy, or if a final policymaker committed the act. *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002). Where a plaintiff seeks to impose liability based on a city's alleged custom or policy, the plaintiff must produce evidence that the custom or policy was the "moving force behind the constitutional violation." *City of Canton v. Harris* (1989) 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412. A city is only liable when the city itself causes the constitutional violation. *Id.* "[P]laintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of Comm'rs of Bryan County v. Brown* (1997) 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626. The plaintiff's burden in establishing causation is a heavy one. *City of Canton, supra,* 489 U.S. at 385.

Cities may not be charged with liability for the unconstitutional discretionary actions of city employees under § 1983. *City of St. Louis v. Praprotnik* (1988) 485

20

U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107.  Cities are not vicariously liable under § 1983 for the random acts or isolated unconstitutional acts by non-policymaking employees.  *McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1997).  Cities are not liable where the alleged deprivation cannot be attributed to conduct which was performed as official city policy.  *Blair v. City of Pomona*, 223 F.3d 1074 (9th Cir. 2000).

Where plaintiff seeks to impose *Monell* liability based on an informal custom or practice, plaintiff must show that the informal conduct was so frequent or pervasive that it must necessarily have come to the attention of the responsible policymaker who then acted with deliberate indifference in failing to correct the conduct. *City of Canton, supra,* 489 U.S. at 378. Deliberate indifference is a conscious choice to follow a course of action among various alternatives. *Id.* at 384. The conduct must be so permanent and settled that it amounts to a custom or usage with the force of law. *City of St. Louis, supra,* 485 U.S. at 112.

In *Carter v. District of Columbia,* 795 F.2d 116, 123-124 (D.C. Cir. 1986), the court held that seven deaths and other scattered incidents of police misconduct did not coalesce into a policy.  The court noted that if that were the case, "then practically every large metropolitan police force…could be targeted for liability." *Id.* at 123.  In *Hamilton v. Rodgers*, 791 F.2d 439, 443-444 (5th Cir. 1986), the court held that evidence of a dozen incidents of racist bigotry and supervisory knowledge of these incidents over a two and one-half year period was insufficient to establish a policy of bigotry. The court found it significant that there was no officially promulgated policy encouraging racial discrimination and there was in fact a departmental rule explicitly prohibiting racial slurs or jokes. *Id.*

To establish *Monell* liability in this matter, the evidence must demonstrate that the employees were "highly likely" to inflict the particular injury suffered by the Plaintiffs; a finding of culpability cannot rest on a mere probability that an officer

21

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

inadequately trained will inflict any constitutional injury. *Board of County Comm'rs, supra,* 520 U.S. at 405-408 (county was not liable for excessive force committed by deputy, even though sheriff hired deputy despite lengthy criminal record, including assault and battery, resisting arrest and public drunkenness); *Aguillard v. McGowan,* 207 F.3d 226 (5th Cir. 2000) (county was not liable for shooting death during arrest warrant even though deputy had a prior law enforcement record where there was no evidence that the deputy had ever wrongfully shot someone or was trigger happy).

In the present matter, Plaintiffs allege that Defendant CITY OF MAYWOOD knew or should have known that the Defendant Officers had a history, propensity, and pattern of "breaking and entering into private residences without just cause, exigent circumstances or warrants, or use of reasonable care, out-of-policy or unconstitutional police tactics to conduct investigations." (FAC ¶¶ 5, 23, 44.) Plaintiffs allege these policies and customs resulted in violations of their constitutional rights.

## A. PLAINTIFFS CANNOT PROVE THAT THE DEFENDANT OFFICERS VIOLATED ANY CONSTITUTIONAL RIGHT.

A city cannot be held liable under § 1983 in the absence of an underlying constitutional violation. *City of Los Angeles v. Heller* (1986) 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (if officer acted constitutionally, city cannot be held liable); *Quintanilla v. City of Downey,* 84 F.3d 353, 354-356 (9th Cir. 1996).

Plaintiffs have not provided and cannot provide evidence that any of the Defendant Officers violated their constitutional rights. As evidenced, the Defendant Officers searched the Lara Home with a warrant and probable cause and detained Plaintiffs with objective justification, reasonable force, and the inherent authority incidental to a valid search. Further, Plaintiffs have not provided and cannot provide any evidence that the Defendant Officers had any involvement in the damage to their real and personal property.

Last, Plaintiffs cannot point to any evidence that shows that the policymakers of the CITY OF MAYWOOD acted with such deliberate indifference such as to promote and maintain a band of "renegade cowboys." This is a case where the police

22

were trying to arrest a fugitive gang member that was refusing to exit his grandmother's house for hours. None of the Defendant Officers violated any of the Plaintiffs' constitutional rights. Without such a violation, Plaintiffs cannot carry their burden on their *Monell* claim, as the CITY OF MAYWOOD and Interim-Chief RICHARD LYONS are entitled to judgment as a matter of law.

## B. PLAINTIFFS HAVE NOT APPROPRIATELY IDENTIFIED THE CUSTOMS OR POLICIES THAT ALLEGEDLY CAUSED THEIR CONSTITUTIONAL DEPRIVATIONS.

In *Board of County Comm'rs, supra,* 520 U.S. at 403, the Court held that in order for municipal liability to attach, the plaintiffs must appropriately identify the custom or policy that they claim is the cause of the particular constitutional deprivations. Here, Plaintiffs simply allege that Defendant CITY OF MAYWOOD maintained had a history, propensity, and pattern of "breaking and entering into private residences without just cause, exigent circumstances or warrants, or use of reasonable care, out-of-policy or unconstitutional police tactics to conduct investigations." This generalization fails to present any evidence of actual policies, practices, procedures, or customs Defendant CITY OF MAYWOOD had in place that caused Plaintiffs to be deprived of their civil rights.

Further, Plaintiffs have not presented any evidence as to how often the alleged policies of "breaking and entering without just cause" and "unconstitutional police tactics" occurred such as to indicate a trend or true pattern. What Plaintiffs fail to realize is that the Maywood Police Department expressly requested the assistance of the SEB, which relieved Maywood's containment positions and employed its own policies and procedures regarding entering the Lara Home.

Plaintiffs have failed to present any evidence that the Defendant Officers were "highly likely" to inflict the particular injury allegedly inflicted. Similarly, Plaintiffs have failed to present any evidence regarding their inappropriate promotion/training allegations. Plaintiffs have not presented any evidence regarding which CITY OF MAYWOOD employees and/or policymakers inappropriately promoted or trained

23

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

which employees.  Plaintiffs have failed to present evidence as to when any of this inappropriate promotion or training occurred.  Last, Plaintiffs have not presented any evidence as to how often this occurred. Without more, Plaintiffs' *Monell* claim cannot stand, and Defendants CITY OF MAYWOOD and LYONS are entitled to judgment as a matter of law.

## C. PLAINTIFFS HAVE NOT PRESENTED EVIDENCE REGARDING ANY UNCONSTITUTIONAL ACTS BY FINAL POLICYMAKERS.

Plaintiffs allege that Defendant Interim-Chief LYONS is a final policymaker, and that he "ratified policies, procedures, customs, and practices which permitted and encouraged [the Maywood Police Department] to unjustifiably, unreasonably, and in violation of the Fourth Amendment use excessive force against unarmed suspects." (FAC ¶ 66.)   However, Plaintiffs' own testimony evidences that the Defendants Officers did not use excessive force upon Plaintiffs. Indeed, ***all Plaintiffs herein testified that the Maywood Defendants did not physically injure them at any time.*** (UMFs 79-100.)   Moreover, Plaintiffs have failed to present any proof of their allegation that Defendant Interim-Chief LYONS was the final policymaker engaged in ratifying policies regarding "use excessive force against unarmed suspects." Even assuming that Interim-Chief LYONS was a final policymaker, Plaintiffs have not presented any proof that he committed or participated in any unconstitutional act.

## D. PLAINTIFFS HAVE NOT ESTABLISHED A CAUSAL LINK BETWEEN ANY MUNICIPAL POLICY, CUSTOM OR SUPERVISORY ACT AND THEIR ALLEGED INJURIES.

Plaintiffs must show a close causal relation between the policy, custom or supervisory act and the injury suffered.  *Johnson v. Hardin County,* 908 F.2d 1280, 1285 (6th Cir. 1990); *Colburn v. Upper Darby Township,* 946 F.2d 1017, 1028  (3rd Cir. 1991) (identified deficiency in training program must be closely related to the ultimate constitutional injury).

Plaintiffs have failed to present any evidence regarding causation in support of their *Monell* claim.  Rather, Plaintiffs have set forth unsupported allegations regarding

24

1  scattered incidents. These scattered incidents do not coalesce into policy. Plaintiffs
2  have failed to present any evidence of the CITY OF MAYWOOD's allegedly
3  improper customs or policies, and have failed to supply any evidence supporting a
4  causal link between the improper customs and policies and their alleged constitutional
5  injuries. Plaintiffs have failed to present any evidence whatsoever demonstrating that
6  the CITY OF MAYWOOD's policies or customs were the "moving force" behind
7  their alleged injuries.

8       Therefore, as Plaintiffs cannot establish the violation of any constitutional
9  rights; cannot identify any specific customs or policies that allegedly caused their
10  constitutional deprivations; cannot establish that Interim-Chief LYONS was a final
11  policymaker; and last, cannot establish a causal link between their alleged injuries and
12  the CITY's customs or policies, Defendant LYONS and the CITY OF MAYWOOD
13  are entitled to judgment as a matter of law on Plaintiffs' *Monell* claim.

14  **XI.  CONCLUSION**

15       Based on the foregoing, Defendants CITY OF MAYWOOD, RICHARD
16  LYONS, JERRY SALGADO, PAUL PINE, and ANDREW SERRATA respectfully
17  request that this Court grant this Motion for Summary Judgment, or, in the
18  Alternative, Partial Summary Judgment as to the issues identified herein.

19

20                                Respectfully submitted,

21  DATED: 3/24/09       **BOHM, MATSEN, KEGEL & AGUILERA, LLP**

22

23                                By: _____

24                                Matthew J. Salcedo,
25                                Attorneys for Defendants CITY OF
26                                MAYWOOD, a municipal corporation and
27                                public entity, RICHARD LYONS, JERRY
28                                SALGADO, PAUL PINE, and ANDREW
                              SERRATA

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**